UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KONATE BOU BOU,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>WARDEN, CALIFORNIA CITY<br>DETENTION FACILITY, *et al.*,<br><br>　　　　　Respondents. | Case No.　1:26-cv-03622 (EJD)<br><br>**ORDER GRANTING MOTION FOR<br>TEMPORARY RESTAINING ORDER<br>AND PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 10 |

Petitioner Konate Bou Bou is an immigration detainee proceeding with a petition for writ of habeas corpus and motion for temporary restraining order. *See* Dkts. 1, 10, 16. Petitioner asserts that (1) he is improperly detained under 8 U.S.C. § 1225(b), and that (2) his to prolonged detention without a bond hearing violates due process. Dkt. 10-2 at 5. He requests that the Court order his immediate release or order Respondents to provide a bond hearing. *See* Dkt. 5–9. For the reasons set forth below, Petitioner's motion for a temporary restraining order is GRANTED in part.

I.　　**BACKGROUND**

Petitioner is a citizen of Mali. Dkt. 6 at 1. Sometime in March 2025, Petitioner entered the United States and was arrested by U.S. Immigration and Customs Enforcement near Roma, Texas. *Id*. He was subsequently issued a Notice to Appear, placing Petitioner in removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). *Id*.; *see also* Dkt. 6-2 at 1. He has remained in detention since—nearly fifteen months—and is currently being held at the California City Corrections Center. Dkt. 10-2 at 1. He asserts that he has not received a bond hearing. *Id*. at 4.

Petitioner, proceeding pro se filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See* Dkt. 1. After being appointed counsel, Petitioner filed an Amended Petition, Dkt. 16,

Case No.: 1:26-cv-03622-EJD

United States District Court
Eastern District of California

and this motion for a temporary restraining order, Dkt. 10. In this motion and the Amended Petition, Petitioner challenges his prolonged immigration detention without a bond hearing as a violation of the INA and due process. Dkt. 10-2 at 5–9. Petitioner requests "immediate release" or, in the alternative, a custody hearing in which Respondents bear the burden of proof. *Id*. at 11.

Respondents filed an opposition to Petitioner's first Petition. Dkt. 6. In opposing Petitioner's motion, they rely entirely on the arguments made in their opposition to the petition. *See* Dkt. 12. They argue that because Petitioner was detained at the border, he was "never admitted to the United States and is thus an 'applicant for admission' under § 1225(a)(1)." Dkt. 6 at 2. Respondents assert that since Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), the Court should deny the request for injunctive relief. *Id*. at 2–3.

## II.   LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Respondents had notice and opportunity to respond in opposition, *see* Dkt. 11, and neither party objected to converting the motion to a motion for preliminary injunction or requested a hearing. Petitioner's motion is therefore converted to a motion for preliminary injunction.

To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008).

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

Petitioner argues that he is likely to succeed on both his statutory claim and due process claim. For the reasons that follow, the Court finds that Petitioner has not met his burden with

Case No.: 1:26-cv-03622-EJD

United States District Court
Eastern District of California

respect to his statutory claim. However, he has shown a likelihood of success on his claim that his continued detention without an individualized bond hearing violates due process.

### 1.    Statutory Claim

Petitioner first argues he is being improperly detained under 8 U.S.C. § 1225(a), and that 8 U.S.C. § 1226(a) should govern his detention. Dkt. 10-2 at 5–6. Petitioner's sole support for this contention is that he was placed in removal proceedings under INA § 240. *Id*. at 6. This argument, however, does not comport with Supreme Court authority or the record before the court.

The Supreme Court has explained that Section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). As such, it "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 289 (emphasis added). Petitioner, who was detained at the border, and not released into the interior of the United States, falls in the former category.

If a noncitizen detained at the border or port of entry "indicates either an intention to apply for asylum … or a fear of persecution," the inspecting immigration officer "shall refer the [noncitizen] for an interview [with] an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "*shall* be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

The record before the Court indicates that Petitioner entered the United States through Mexico, and was arrested by a Border Patrol Agent in the Rio Grande Valley, Texas Border Patrol Sector shortly thereafter. Dkt. 6-1 at 4. He was then placed in expedited removal proceedings (*id*.); claimed fear of returning to Mali (*id*.); was referred to USCIS for a Convention Against Torture

Case No.: 1:26-cv-03622-EJD

assessment and "established that it was more likely that not that [he would] be tortured in Mali" (Dkt. 16-2); and was issued a Notice to Appear charging him as removable under § 1182(a)(6), (7) (Dkt. 6-2 at 4). Therefore, it appears Petitioner falls under § 1225(b)(1)(B)(ii)'s mandatory detention provision.

As such, the Court finds that Petitioner has not shown a strong likelihood of success on his statutory claim. The Court next turns to Petitioner's due process claim.

### 2.    Supreme Court Authority Does Not Bar Petitioner's Due Process Claim.

Relying on *Jennings v. Rodriguez* and *Dep't of Homeland Sec., et al. v. Thuraissigiam*, Respondents argue that Petitioner's detention is consistent with due process because (1) the Supreme Court has upheld the constitutionality of mandatory detention, and (2) Petitioner "has only those rights regarding admission that Congress has provided by statute." Dkt. 6 at 3 (quoting *Dep't of Homeland Sec., et al. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020)). The Court finds, however, that Supreme Court authority does not foreclose Petitioner's as-applied challenge to his prolonged detention.

In *Jennings*, the Supreme Court held that text of §§ 1225(b), 1226(a), and 1226(c) did not "include an implicit 6-month time limit on the length of mandatory detention." *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2026 WL 797694, at *6 (E.D. Cal. Mar. 23, 2026) (citing *Jennings*, 583 U.S. at 301, 304, 306). Instead, the Court cabined its holding to statutory construction and remanded the constitutional question to the Ninth Circuit, thus, leaving the possibility of constitutional challenges to prolonged detention available. *Jennings*, 583 U.S. at 312; *see also Doe*, 2026 WL 797694, at *7; *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1105–06 (W.D. Wash. 2019) (explaining that *Jennings* did not foreclose due process challenges and that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process.").

As such, the Supreme Court's decision in *Thuraissigiam* also does not foreclose Petitioner's due process challenge. This precise issue was addressed in *Padilla*, and the Court

Case No.: 1:26-cv-03622-EJD

4

adopts its reasoning here:

> The Court stands unconvinced that the Supreme Court's decision in *Thuraissigiam* requires dismissal of Plaintiff's due process claim. Given the distinct claims presented in *Thuraissigiam*, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim.
>
> In *Thuraissigiam*, the respondent argued that due process entitled him to an opportunity to reapply for asylum on account of certain alleged defects he identified in the process that led to rejection of his asylum application. [591 U.S. at 138–140]. To understand this claim, the Court first reviews the factual background and procedural posture of the case. Like Plaintiffs in the case before this Court, the respondent in *Thuraissigiam* was placed into expedited removal proceedings after being detained upon his entry to the United States where he was found inadmissible. *Id*. at [114]. Like Plaintiffs here, the respondent applied for asylum. *Id*. But unlike Plaintiffs here, the respondent in *Thuraissigiam* was unable to convince the immigration officer, a supervising officer, or immigration judge that he faced a credible fear of persecution if returned to his home country. *Id*. at [114]. Having failed to present a bona fide asylum claim, the respondent was subject to "remov[al] from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); *Thuraissigiam*, [591 U.S. at 114]. The respondent then filed a habeas petition through which he sought a writ of habeas corpus, an injunction, or writ of mandamus directing the Department of Homeland Security to provide him a "new opportunity to apply for asylum and other applicable forms of relief." *Thuraissigiam*, [591 U.S. at 114–15]. He argued that he had been deprived of a meaningful opportunity to establish his credible fear claims and that the wrong standards were applied. *Id*. But the respondent "made no mention of release from custody." *Id*.
>
> The Supreme Court in *Thuraissigiam*, rejected respondent's due process claim. The Court explained that "aliens who arrive at ports of entry ... are 'treated' for due process purposes 'as if stopped at the border.'" *Id*. at [139] (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). And as to any due process rights concerning their efforts to gain admission, these individuals possess "only those rights regarding admission that Congress has provided by statute." *Id*. at [140]. The Court based this conclusion on the proposition that "[t]he power to admit or exclude aliens is a sovereign prerogative" and that "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id*. at [139] (citation and quotation omitted). With these principles in mind, the Court held that as to his request for admission into the United States, the respondent had only "a right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum.'" *Id*. at [140] (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)). Having been "given that right," the respondent was entitled to no more process in his efforts to gain admission to the United States. *Id*.

*Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023).

Case No.: 1:26-cv-03622-EJD

5

Similar to *Padilla*, the Petitioner here is an applicant for admission who challenges only his prolonged detention under § 1225(b)(1), not the merits of his asylum claim and decisions concerning it. Following this logic, numerous district courts have determined that unreasonably prolonged detention of individuals without a bond hearing under section 1225(b), pending removal proceedings, violates the due process clause. *See, e.g., Harun Mohammed v. Warden of the Cal. City Det. Ctr.*, 2026 WL 192368, at *2–4 (E.D. Cal. Jan. 26, 2026) (considering a detainment period of 17 months); *Abubakar Abdul-Samed v. Warden of the Golden State Annex Det. Facility*, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process") (citation omitted); *Rowe v. Archambeault*, 2026 WL 879487, at *4 (S.D. Cal. Mar. 31, 2026) ("prolonged detention under § 1225(b) without a bond hearing can eventually give rise to due process issues"); *see also Banda*, 385 F. Supp. 3d at 1116 (collecting cases).

Accordingly, the Court finds that the holdings in *Thuraissigiam* and *Jennings* do not foreclose Petitioner's due process claim concerning his prolonged detention.

### 3.    Petitioner Has Shown a Likelihood of Success on His Due Process Claim.

Petitioner has shown a strong likelihood of success on his claim that his prolonged detention without a bond hearing violates due process. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

First, Petitioner asserts he possesses a liberty interest in securing his freedom from detention. Dkt. 10-2 at 7. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner was detained in March 2025 and has remained in custody for

Case No.: 1:26-cv-03622-EJD

approximately fourteen months. As Petitioner has been deprived of the liberty secured by the due process clause, he has established a clear liberty interest. *Id.* at 690, 693; *see also Mohammed*, 2026 WL 192368, at *3 (finding a petitioner detained for 17 months under Section 1225(b) had "a clear liberty interest" under the due process clause).

Second, to determine whether Petitioner's continued detention without a bond hearing accords with due process, the Court must consider if the duration of Petitioner's detention has become unreasonable. *Garcia*, 2025 WL 1927596, at *2; *Mohammed*, 2026 WL 192368, at *3. In determining whether detention has become unreasonably prolonged, courts in this district have considered "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022); *see also Mohammed*, 2026 WL 192368, at *3 (finding the "considerations identified are relevant to the due process analysis" under Section 1225(b), and applying the *Lopez* test); *see also Bobokulov Akmal v. Warden of Cal. City Det.*, 2026 WL 657606, at *6 (E.D. Cal. Mar. 9, 2026) (applying the test enumerated in *Lopez* to a prolonged detention claim under § 1225(b)(1)); *Lebedev v. Warden of Golden State Annex*, 2026 WL 482733, at *5–8 (E.D. Cal. Feb. 20, 2026) (same).

### a.    Total length of detention

The length of detention "is the most important factor." *Lopez*, 631 F. Supp. 3d at 882 (quoting *Banda*, 385 F. Supp. 3d at 1118). When detention continues beyond a year, "courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). It is undisputed that Petitioner has remained detained for fourteen months. This duration, without a bond hearing, supports finding his continued detention unreasonable. *See, e.g., Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024) (affirming district court judgment ordering bond hearing for petitioner detained seven months); *Mohammed*, 2026 WL 192368, at *3 (finding a 17-month detention "far exceeds that other courts have found warrant a bond hearing under the Due Process Clause"); *R.M. v. Warden of the Golden State Annex ICE*

United States District Court
Eastern District of California

*Det. Facility*, 2026 WL 836322, at \*5 (E.D. Cal. Mar. 26, 2026) (detention "for nearly twelve months with no end currently in site" weighed in favor of finding a due process violation).

### b.    Likely duration of future detention

"[When] removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Lopez*, 631 F. Supp. 3d at 881 (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)). There is no evidence before the Court suggesting that Petitioner's removal proceedings will come to a close soon. Respondents do not identify any end date for Petitioner's detention. Further, Petitioner may appeal an adverse finding to the Board of Immigration Appeals and seek judicial review by the Ninth Circuit, and such processes may prolong the time for a final order even further. *See Banda,* 385 F. Supp. 3d at 1119 (weighing in favor of petitioner on this factor because his asylum application was pending review by the BIA and noting that this process may take up to two years or longer); *Abdul-Samed v. Warden of Golden State Annex Det. Facility,* 2025 WL 2099343, at \*7 (E.D. Cal. July 25, 2025) ("Petitioner's possible administrative appeal and judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"). In similar circumstances, courts have weighed this factor in favor of the petitioner. *See, e.g., Loba L.M. v. Andrews,* 2025 WL 2939178, at \*6 (E.D. Cal. Oct. 16, 2025), *adopted,* 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025); *Rowe,* 2026 WL 879487, at \*4. As such, this factor supports finding that Petitioner's detention is unreasonable.

### c.    Delays in removal proceedings

In evaluating any delays, "the operative question should be whether the alien has been the cause of delayed immigration proceedings and, where the fault is attributable to some entity other than the alien, the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable." *Doe v. Andrews*, No. 1:25-CV-00506-SAB-HC, 2025 WL 2590392, at \*8 (E.D. Cal. Sept. 8, 2025), *report and recommendation adopted*, No. 1:25-CV-00506-KES-SAB (HC), 2025 WL 2896218 (E.D. Cal. Oct. 11, 2025). Petitioner's motion for a temporary restraining order noted that his next hearing was set for May 26, 2026. Dkt. 16-2 at 3. However, as

Case No.: 1:26-cv-03622-EJD

United States District Court
Eastern District of California

this motion has been pending, that hearing was postponed to June 24, 2026. *See* EOIR Automated Case Information, available at https://acis.eoir.justice.gov. Further, it took months after Petitioner's initial detainment to set this hearing. There is no information before the Court suggesting that these delays may be attributed to Petitioner. Accordingly, this factor weighs in favor of finding that the detention duration is unreasonable.

### d.    Weighing interests

Finally, weighing the interests of Petitioner and the government also supports ordering injunctive relief. While the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger, the governmental interest at stake is not the detention itself, but rather "the government's ability to detain [petitioner] *without a bond hearing*." *Andrews*, 2025 WL 2590392, at *8 (emphasis in original, citation omitted). This interest in detaining Petitioner without providing a bond hearing is low. *Id.* (citing *Henriquez v. Garland*, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022). The Court finds the identified governmental interest is outweighed by the length of detention to date, the likely extent of Petitioner's future detention, and the delays in Petitioner's immigration proceedings. *See Andrews*, 2025 WL 2590392, at *8 (finding length of past detention and likely future detention alone outweighed government's interests).

### B.    Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary. *See Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Given that Petitioner has been detained for fourteen months without an

Case No.: 1:26-cv-03622-EJD

United States District Court
Eastern District of California

United States District Court
Eastern District of California

opportunity to challenge his detention, the court finds that he would be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

### C.    Balance of the Equities

As for the balance of equities and the public interest factors of the inquiry, these factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This inquiry favors Petitioner. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner in violation of his due process rights is low. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). As such, the equities lean towards provision of a bond hearing.

### D.    Remedy

Petitioner requests an order securing his immediate release so that he may adequately prepare for his immigration case, or in the alternative, a bond hearing. Dkt. 10-2 at 11–12. Petitioner provides no authority to support his claim that he is entitled to an order of release. As such, the Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release. *See, e.g.*, *Mitka v. ICE Field Off. Dir.*, No. C19-193 MJP, 2019 WL 5892025, at *4 (W.D. Wash. Nov. 12, 2019) (denying request for immediate release but ordering bond hearing); *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *11 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (same); *Yagao v. Figueroa*, No. 17-CV-2224-AJB-MDD, 2019 WL 1429582, at *4 (S.D. Cal. Mar. 29, 2019) (same).

## IV.    BOND

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

Case No.: 1:26-cv-03622-EJD

"Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). The court finds that no security is required here. Courts regularly waive security in cases like this one. *See, e.g.*, *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## V.   CONCLUSION AND ORDER

For the reasons set forth above, the court ORDERS:

1.   Respondents are ORDERED to provide Petitioner, within seven (7) days of this Order, a constitutionally adequate bond hearing before an immigration judge. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present. In the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the immigration judge shall consider Petitioner's financial circumstances and alternative conditions of release.

2.   Respondents shall submit an answer to the Amended Petition, Dkt. 16, by June 25, 2026. Petitioner may file a reply by July 2, 2026.

**IT IS SO ORDERED.**

Dated: June 4, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 1:26-cv-03622-EJD

United States District Court
Eastern District of California